# In Re: Funding Unfunded Debt of the County of Wyoming, Pa.

*J. Joel Turrell & Thomas J. O'Neill,* for petitioners.

GARDNER, *P.J.*, December 6, 1983 — On November 3, 1983, pursuant to a resolution adopted October 17, 1983, the Board of Commissioners of Wyoming County, Pa. hereinafter "Commissioners", petitioned this court for permission to fund the unfunded debt of Wyoming County under the provisions of the Act of July 12, 1972, P.L. 781, No. 185, §510, as amended, 53 P.S. §6780-210, hereinafter the "act".

A hearing was held December 2, 1983, and from the testimony adduced thereat, together with exhibits received in evidence, we find the following facts:

1. In February, 1980, the Commissioners commenced a program of reassessment of the real property of Wyoming County.

2. To implement the reassessment program, the Commissioners invited proposals and eventually contracted for services expected to total, by the completion of the project, $648,000.

3. The Commissioners intended to pay for (or reimburse the County for advances from current funds) the reassessment program from the proceeds of a bond issue under the "act", supra, Section 101, et. seq., which would not have required court approval.

4. The intentions set forth in Paragraph Three hereof resulted from advice received from the Pennsylvania State Association of County Commissioners, assertedly based on the experience of other unspecified Commonwealth Counties.

5. The Commissioners were disabused of the intentions described in Paragraph Three hereof by counsel, as indicated by an opinion, received in evidence as Exhibit C, stating that court approval of any bond issue to "fund" the said reassessment program must receive court approval.

6. The current County tax rate is twenty mills, the maximum legally leviable.

7. That the County presently is indebted on tax anticipation notes in the amount of $500,000.

8. That the sum of $700,000 must be raised by Wyoming County to meet its present unfunded indebtedness, the unpaid balance of the total cost of the reassessment program, and the costs generated by the proposed issue of bonds.

9. If the relief requested by the petition heretofore filed is not granted by this court, Wyoming County would be required to reduce services to such an extent that, as testified by Robert Barziloski on behalf of the Board of Commissioners, the "doors of the courthouse" would have to be closed.

## DISCUSSION

The act sets forth the relevant criteria prerequisite to court approval in the instant matter as follows:

". . . the court shall make an order granting authority to fund all or a part of such unfunded debt if the court shall find that such unfunded debt is a lawful obligation of the local government unit, that there has been an unforeseeable decline in revenues, . . . or that it was not reasonable to foresee such obligation; that paying such debt by curtailing municipal services will be dangerous to the public health, safety or education, and that it is not feasible or not in the public interest to levy additional taxes in the current fiscal year."

We have no difficulty at all in concluding that the unfunded debts are lawful obligations of Wyoming County. The Commissioners are statutorily required to reassess the real property of the County; hence, the propriety of the program undertaken in 1980 is undeniable.

Nor is there any question but that it would be impossible to levy sufficient additional taxes in the current fiscal year. Succinctly put, the county is already at its statutory limit. In fact, one of the purposes of the reassessment program itself is to provide a fair portrayal of the realty taxing base, so as to enable the Board of Commissioners to meet its obligations to finance the inflation-aggravated costs of county government.

Also, something less than installment repayment of the cost of the reassessment program, over a period of years, not only is unrealistic in view of the long-range benefits of the program itself, but would be catastrophic to services, not only desirable ones, but those legally mandated of the county.

Finally, we address the remaining criterion — whether there has been an unforeseeable decline in revenues or, alternatively, whether it was not reasonable to foresee the possible obligation to pay the entire costs of the reassessment program from revenues presently available.

Counsel for the Commissioners contend that both supporting standards are instantly present. Although we are intrigued with the argument that failure to receive anticipated bond proceeds is a decline in "revenues", we would prefer to base our conclusion on the alternative statutory provision.

The cause of the present dilemma is a mistake in law resulting from inaccurate advice of the Commissioners Association. Against the statutory context, the question becomes whether it was reasonable to rely on the "advice" so received.

We conclude that the Commissioners did act reasonably. We take notice of the oft-repeated practice, particularly by smaller Counties, such as Wyoming, of contact with and reliance upon information from and instructions of the County Commissioners As-

sociation, one of the strongest and most prestigious groups representing public office holders, one which has legal recognition by the Commonwealth itself. To now, after the fact, criticize such a source because it resulted in a frustrating mistake, would be to fail to accord the relationship between the Association and individual county governments the frequency of use to which the Commissioners of this, and other counties and their executive staffs have become accustomed.

Therefore, we conclude that the original intention of the Commissioners was understandable under the circumstances and that the obligation to pay the reassessment costs, the real reason for the county's debt, from current revenues was reasonably unforeseeable.

Finally, we would have preferred that the time constraints placed upon us had been such that a more exhaustive opinion could have resulted, particularly since the instant matter is the first of its kind in this county's history, or, at least, in the past forty years. Nonetheless, the proceedings were amply demonstrative of the desire of the Wyoming County Commissioners to acquit themselves of their responsibilities to the people of the County. Because of that, and under the authority of the Act, we make the following conclusions of law:

1. The unfunded indebtedness which was the subject of the testimony and other exhibits in the instant matter is a lawful obligation of Wyoming County, Pa.

2. It was not reasonable for the Wyoming County, Pennsylvania Commissioners to foresee the obligation to pay the entire cost of the reassessment program pertaining to the real property situate in Wyoming County, Pa. from current revenues.

3. Paying the unfunded debt by curtailing services would be dangerous to public health and safety.

4. It is not in the public interest to levy additional taxes in the current fiscal year.

## ORDER

And now, this December 6, 1983, after hearing upon notice pursuant to the order of this court, and upon consideration of the brief filed by counsel for petitioner, and for the reasons set forth in the opinion of even date, filed in the above-captioned matter, together with the conclusions of law contained therein, the court finds that the County of Wyoming, Pa. has an unfunded debt, as defined in Section 509 of the Local Government Unit Debt Act, Act of July 12, 1972, P.L. 781, as amended and reenacted by Act No. 1978-52, as amended (the act), in the amount of $700,000;

That the requested funding of the unfunded debt, and the proposed maturities, will not endanger the rendering of municipal services nor require the levying of excessive taxes; and

That the new debt is within the statutory limitations of Section 202 of the act, and the whole thereof shall be charged against non-electoral debt of the county. Consequently, the court concludes that petitioner has presented sufficient evidence to support the prayer of its Petition seeking approval to fund its stated unfunded debt by an issue of general obligation bonds pursuant to Section 510 of the said act, and It is ordered:

1. That the county be and is authorized to fund the unfunded debt and the costs of the issuance of the bonds in the amount of $700,000 by a series of general obligation bonds.

2. That these general obligation funding bonds shall be payable on a level debt service basis over a period of not to exceed ten years.

3. That the bonds approved hereby shall be issued and sold as provided by the terms of the act.